UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Raoul Melancon, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action H-12-512 |
| | § | |
| INEOS USA, LLC et al., | § | |
| | § | |
| Defendants. | § | |

### Order

Pending before the court is defendants' motion for summary judgment. Dkt. 9. Upon consideration of the motion, the response, the reply, the summary judgment record, and the applicable law, the motion is GRANTED.

### Background

Plaintiff Raoul Melancon, III went to work for defendant INEOS USA, LLC as an outside operator at INEOS's Polypropylene Unit in July 2007. Dkt. 9-1 at 3. Melancon is a light skinned African American male. *Id.* at 48. Melancon successfully completed his initial 6 month probation for new hires. Dkt. 1. Despite many positive entries in his personnel file, Melancon also was counseled for several violations in the first year and a half of his employment. Dkts. 9-3, 9-4. He admits that these were valid counselings. Dkt. 9-1 at 8-10. Finally, in January of 2009, Melancon's manager, Dean Siebert, placed him on an 18 month Performance Improvement Plan ("PIP"). Dkts. 9-3, 9-5. Melancon admits that white employees were also placed on 18 month PIPs, although he does not know why. Dkt. 9-1 at 11–12. Both his 2008 year-end review and the PIP emphasized that although Melancon was a good team player and a hard worker, he lacked attention to detail,

particularly when it came to understanding the working and safety needs of the equipment. Dkts. 9-4, 9-5.

The PIP called for regular reviews. His 3 month review was satisfactory, but at 6 months Melancon failed to meet expectations. Dkt. 9-5. Specifically, despite training he was unable to properly identify the process flows and how they operated; unable to identify problems and suggest solutions; and failed to ask questions when necessary to expand his knowledge. *Id.* Additionally, the PIP progress report noted that he spent a great deal of time on his cell phone and on the computer, and that he had gotten into an altercation with a contractor for which he had to be reprimanded. *Id.* As a result, his pay was reduced a level. *Id.* Additionally, he was required to pass a walk-through inspection by a certain date to demonstrate the knowledge he had gained. *Id.* As of his 9 month review, he still had not made sufficient changes, but his supervisors recognized some progress. *Id.* However, on his 12 month review, Melancon had achieved the required improvements. *Id.* He was continued on the PIP. *Id.* At 15 months, his progress was good enough that his previous wage rate was reinstated. *Id.* Finally, at 18 months, despite comments that Melancon still had problems understanding the equipment processes and lacked skill at troubleshooting, it was deemed that he had made sufficient progress to deactivate the PIP. *Id.*

However, on February 18, 2011, Melancon opened a bleed valve on a line that was still in service. Dkt. 9-8. Despite knowing that there was flow from the valve, he failed to check it for hydrocarbons—standard procedure when opening equipment to the atmosphere. *Id.* He then tagged the incorrect valve. *Id.* A later shift was alerted to the hydrocarbon release, located the open valve, and discovered that the wrong valve had been tagged by Melancon. *Id.* They closed the valve and moved the tag. *Id.* Investigation determined that the leak was caused by human error—Melancon's error, and that opening the valve that was still in service created a significant hazard, either

atmospheric or fire or both. *Id.* Melancon's employment was terminated based on the incident (the "LOTO incident").[1] Dkt. 9-1 at 23–26. Although Melancon maintains that he should not have been terminated, he agrees that an incident like this is the type of safety offense which could realistically lead to termination of employment. *Id.* at 15, 22.

## LEGAL STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). A fact issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the [nonmovant]." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

When the movant bears the burden of proof on an issue, he must establish beyond peradventure *all* of the essential elements of the claims or defenses to warrant judgment in his favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But when the movant does not bear the burden of proof on a claim or affirmative defense, he bears the initial burden of production to show an absence of evidence to support the non-movant's claim. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). If the movant makes this showing, the ultimate burden to avoid summary judgment shifts to the non-movant who "must go beyond the

---

[1] LOTO stands for lockout/tagout, an OSHA term referring to a specific safety practice to prevent accidental startup of equipment or machinery during service activities which could lead to hazardous discharges. *See* Dkt. 9 at 3 n.3.

3

pleadings and come forward with specific facts indicating a genuine issue for trial." *Davis-Lynch, Inc., v. Moreno*, 667 F.3d 539, 550 (5th 2012). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are no substitute for specific facts showing a genuine dispute for trial. *TIG Ins. Co.*, 276 F.3d at 759.

## ANALYSIS

As a threshold matter, the court must clarify the plaintiff's claims. Plaintiff alleges five causes of action in his complaint: "Race Discrimination and Hostile Work Environment under Title VII and 42 U.S.C. § 1981;" "Race Discrimination Through the Use of Discipline and Discharge pursuant to 42 U.S.C. § 1981 and Title VII;" "Race Discrimination in Job Training;" "Discriminatory Administration of Tests;" and "Discrimination in Methods of Test Validation." Dkt. 1. However, despite plaintiff's denomination of his claims, he has two cognizable causes of action: (1) Discrimination pursuant to Title VII and 42 U.S.C. § 1981; and (2) Hostile Work Environment based on Race pursuant to Title VII and 42 U.S.C. § 1981. Additionally, the court notes that although Melancon listed race, color, national origin, and religion on his EEOC Charge of Discrimination Form (Dkt. 9-10), the only allegations contained in the complaint are based on race. Accordingly, he has abandoned his claims of discrimination on any other basis.

**A.    Race Discrimination**

"The McDonnell Douglas burden-shifting framework applies to [Melancon's] race discrimination . . . claims because they are based on circumstantial evidence."[2] *Harrison v. Corrections Corp. of Am.*, 476 Fed App'x 40, 43 (5th Cir. 2012). "Under the first step of the McDonnell Douglas framework, the plaintiff must establish a prima facie case." *Id.* "After the

---

[2] "Employment discrimination claims brought under 42 U.S.C. [§] 1981 . . . are analyzed under the evidentiary framework applicable to claims arising under Title VII." *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).

4

plaintiff establishes a prima facie case, the burden 'shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the [action].'" *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973)). "If the defendant offers such a reason, the burden shifts back to the plaintiff to show that either (1) the defendant's alleged justification was pretext for discrimination, or (2) that the defendant's reason, although true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic." *Bissett v. Beau Rivage Resorts, Inc.*, 442 Fed. App'x 148, 151–52 (5th Cir. 2011) (citing *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir.2007)).

Assuming without deciding that Melancon has met his burden to show a prima facie case, the court holds that his claims for discrimination fail because he has not demonstrated that INEOS's legitimate non-discriminatory reason for terminating his employment was pretext. Defendants argue—and plaintiff agrees in his deposition—that the LOTO incident was a safety breach and could lead to termination. Dkt. 9-1 at 15, 22. Instead, plaintiff contends that he was "set up" for termination because he was denied the proper training course based on race. Additionally, he argues that his supervisor performed unfair walkthroughs and failed him based on race. And, he alleges that special bonus meal certificates were withheld from him based on his race. None of these allegations finds support in the record. The only evidence adduced by plaintiff[3] about the training course is portions of his deposition in which he discusses the existence of the training but states that it was discontinued after the three supervisors received training. Dkt. 9-1 at 32–33, 43. Race is simply not mentioned much less proven to be the determining factor for Melancon's not being enrolled in the course.

---

[3]In fact, plaintiff adduced no evidence but cited to defendants' exhibits.

5

Likewise, Melancon fails to adduce any evidence that he was unfairly failed on his walk-through exams based on race. *Id.* at 16–20, 31, 41–42. And, Melancon's allegations regarding the meal certificates, or café bucks incident suffers similar infirmities, because he never mentions the race of the people on the shift who received café bucks.. *Id.* at 38–39. In short, Melancon has failed to articulate any instance of race discrimination. And, his unsubstantiated assertion that these actions were based on race is insufficient to defeat summary judgment. *See Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir.1994) ("Generalized testimony by an employee regarding his subjective belief that his discharge was the result of discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge."). Therefore, summary judgment for defendants is appropriate on plaintiff's Race Discrimination claims under Title VII and 42 U.S.C. § 1981.

**B.    Hostile Work Environment**

"In order to establish a hostile working environment claim, [a plaintiff] must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). The court reviews "the elements of the hostile work environment claim using a totality-of-the-circumstances test that focuses on 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance.'" *Howard v. United Parcel Serv., Inc.*, 447 Fed App'x 626, 631–32 (5th Cir. 2011) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir.2000)). "Although discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or

6

pervasive' to support evidence of a hostile work environment claim, simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Id.* at 632 (internal quotations and citations omitted). "Furthermore, the Supreme Court has warned that these high standards are intentionally demanding to ensure that Title VII does not become a general civility code and when properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language." *Id.* (internal quotations and citations omitted).

     In their motion for summary judgment, defendants argue that plaintiff cannot make out a prima facie case of hostile work environment because none of the alleged harassing incidents was based on race. In his response, plaintiff fails to contest defendants' argument. Even assuming that he has not conceded his hostile work environment cause of action by failing to defend it, plaintiff's claim still fails. In his complaint, he alleges that his supervisor, Mr. Siebert, (1) spoke to him overly loudly like he could not understand; (2) asked Melancon repeatedly if he had understood the terms of the PIP as though he could not read English; and (3) periodically made comments to Melancon to the effect that he should be doing work instead of hanging around. Additionally, Melancon testified that Siebert seemed to have it in for him, based on his basic treatment relative to that of the other employees in the area. Dkt. 9-1 at 38. Notably missing from Melancon's evidence and allegations is the subject of race. In the only incident where race was raised, Melancon raised it himself. During the administration of Melancon's PIP, Siebert asked him several times if he understood. *Id.* at 47. Finally Melancon responded that although a lot of guys there were Hispanic and may not understand English, he, Melancon, was African American and understood English. *Id.* at 47–48. Melancon informed Siebert that he was of French heritage, hence his name, Raoul, and his light skin. *Id.* at 48. Melancon further testified that Siebert looked surprised and said he did not

7

know that. *Id.* This incident, if anything, undermines Melancon's assertion that Siebert's treatment of him was race-based—since Siebert apparently did not know Melancon's race. In any event, it does not support Melancon's hostile work environment claim. Accordingly, since Melancon cannot make out a prima facie case, his hostile work environment claim fails.

## Conclusion

Pending before the court is defendants' motion for summary judgment on Melancon's claims. Dkt. 9. Upon consideration of the motion, the response, the reply, and the applicable law, the motion is GRANTED.

It is so ORDERED.

Signed at Houston, Texas on March 25, 2013.

_____
Gray H. Miller
United States District Judge